UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| VALORIE WINN,<br><br>　　　　Plaintiff,<br><br>　　v.<br><br>MONDELEZ INTERNATIONAL, INC., et al.,<br><br>　　　　Defendants. | Case No.17-cv-02524-HSG<br><br>**ORDER DENYING PLAINTIFF'S MOTION TO REMAND; DIRECTING PARTIES TO SHOW CAUSE**<br><br>Re: Dkt. Nos. 19, 22 |

Pending before the Court are a motion to remand by Plaintiff Valorie Winn, Dkt. No. 19, and a motion to dismiss by Defendant Mondolēz International, Inc. ("Mondolēz"), Dkt. No. 22. For the reasons set forth below, the Court **DENIES** Plaintiff's motion and orders the parties **TO SHOW CAUSE** why the case should not be stayed pending certain decisions by the Ninth Circuit.[1]

# I.    BACKGROUND

## A.    Factual Allegations

Plaintiff alleges the following facts in this putative class action against Mondolēz and Defendant Pak 'N Save (collectively referred to as "Defendants").

Mondolēz and Pak 'N Save market and sell Ginger Snaps, "a cookie product that contained partially hydrogenated oil ('PHO') until as recently as December 28, 2014." Dkt. No. 1-1[2] (Complaint, or "Compl.") ¶¶ 3, 8. Plaintiff alleges that "PHO is a food additive banned in the United States and many parts of the world due to its artificial trans fat content," *id.* ¶ 4, and

---

[1] The Court finds this matter appropriate for disposition without oral argument and the matter is deemed submitted. *See* Civil L.R. 7-1(b).
[2] The Complaint can be found beginning on ECF page 7 of Docket Number 1-1.

devotes a substantial portion of the Complaint to detailing her allegations that "[a]rtificial trans fat is a toxic, unlawful food additive," *see id.* ¶ 16; *see also id.* ¶¶ 17-65.

Plaintiff "purchased Ginger Snaps approximately 6-8 times annually for many years," with the most frequent location of purchase being a Pak 'N Save grocery store in Emeryville. *Id.* ¶¶ 67-68; *see also* Mot. at 1. She first learned of "Mondolēz's unlawful acts . . . in July 2016 when she learned that Ginger Snaps had been unlawfully using an unsafe food additive for years and are fraudulently marketed." Compl. ¶ 69. In purchasing the cookies, Plaintiff "read and relied on various health and wellness claims appearing on its packaging . . . which individually and especially in the context of its packaging as a whole, misleadingly implied that Ginger Snaps are healthy." *Id.* ¶ 70; *see also id.* ¶¶ 73-81 (describing the specific misrepresentations).

Plaintiff alleges several causes of action against Defendants, including violations of California's Unfair Competition Law, Cal. Bus. & Prof. Code §§ 17200, *et seq.*; California's False Advertising Law, *id.* §§ 17500 *et seq.*; and California's Consumer Legal Remedies Act, Cal. Civ. Code §§ 1750 *et seq.* Compl. ¶¶ 125-40, 147-79. She further alleges breach of implied warranty of merchantability and breach of express warranty. *See* Compl. ¶¶ 141-46, 180-86.

### B. Procedural Posture

Plaintiff filed the Complaint in Alameda County Superior Court on March 28, 2017. Dkt. No. 1-1 at 7 (ECF pagination). On May 3, 2017, Mondolēz filed its Notice of Removal ("Notice"). Dkt. No. 1. Plaintiff filed this motion to remand on May 25, 2017. Dkt. No. 19 ("Mot."). Mondolēz filed an opposition on June 8, 2017, Dkt. No. 24 ("Opp."), and Plaintiff replied on June 16, 2017, Dkt. No. 27 ("Reply").

On May 31, 2017, Mondolēz filed a motion to dismiss and/or strike. Dkt. No. 22. Plaintiff filed her opposition on June 14, 2017, Dkt. No. 25, and Mondolēz replied on June 21, 2017, Dkt. No. 28.

## II. LEGAL STANDARD

"It is axiomatic that federal courts are courts of limited jurisdiction." *Polo v. Innoventions Int'l, LLC*, 833 F.3d 1193, 1195 (9th Cir. 2016) (citing *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994)). A defendant may remove an action filed in state court "*if* the federal

court could have exercised original jurisdiction in the first instance." *Id.* at 1196 (citing 28 U.S.C. § 1441(a)-(b)) (original emphasis). One source of such jurisdiction is the Class Action Fairness Act ("CAFA"). As relevant here, under CAFA, district courts have original jurisdiction over civil class actions where the matter in controversy exceeds $5 million, where "any member of a class of plaintiffs is a citizen of a State different from any defendant," and where the number of putative class members exceeds 100. *See* 28 U.S.C. §§ 1332(d)(2)(A), (d)(5)(B).

Under the "local controversy exception," however, district courts "shall decline" to exercise CAFA jurisdiction

> (i) over a class action in which—
>
>> (I) greater than two-thirds of the members of all proposed plaintiff classes in the aggregate are citizens of the State in which the action was originally filed;
>>
>> (II) at least 1 defendant is a defendant—
>>
>>> (aa) from whom significant relief is sought by members of the plaintiff class;
>>>
>>> (bb) whose alleged conduct forms a significant basis for the claims asserted by the proposed plaintiff class; and
>>>
>>> (cc) who is a citizen of the State in which the action was originally filed; and
>>
>> (III) principal injuries resulting from the alleged conduct or any related conduct of each defendant were incurred in the State in which the action was originally filed; and
>
> (ii) during the 3-year period preceding the filing of that class action, no other class action has been filed asserting the same or similar factual allegations against any of the defendants on behalf of the same or other persons[.]

*Id.* § 1332(d)(4)(A). With respect to the criteria set forth in sections 1332(d)(4)(A)(i)(II)(aa) ("section (aa)") and 1332(d)(4)(A)(i)(II)(bb) ("section (bb)"), courts may "look only to the complaint to determine whether [they] are met," which "inherently cabins the amount of detail required to satisfy the local controversy exception." *See Allen v. Boeing*, 821 F.3d 1111, 1117 (9th Cir. 2016) (citing *Coleman v. Estes Exp. Lines, Inc.*, 631 F.3d 1010, 1015 (9th Cir. 2011)); *see also Coleman*, 631 F.3d at 1015 ("We hold that CAFA's language unambiguously directs the district court to look only to the complaint in deciding whether the criteria set forth in §

3

1332(d)(4)(A)(i)(II)(aa) and (bb) are satisfied.").

The local controversy exception "is a narrow one." *Benko v. Quality Loan Serv. Corp.*, 789 F.3d 1111, 1116 (9th Cir. 2015). While the defendant bears the burden of proving that removal is appropriate, a plaintiff bears the burden of showing that the local controversy exception applies. *See Serrano v. 180 Connect, Inc.*, 478 F.3d 1018, 1024 (9th Cir. 2007) ("[A]lthough the removing party bears the initial burden of establishing federal jurisdiction under § 1332(d)(2), once federal jurisdiction has been established under that provision, the objecting party bears the burden of proof as to the applicability of any express statutory exception under §§ 1332(d)(4)(A) and (B).").

## III.  DISCUSSION

### A.  The Court Denies Plaintiff's Motion to Remand Because the Action Does Not Fall Within CAFA's Local Controversy Exception.

It appears to be undisputed that Plaintiff's action falls within this Court's original jurisdiction under CAFA. Thus, the determinative issue with respect to the question of remand is whether this action falls within CAFA's local controversy exception, which would require the Court to decline to exercise CAFA jurisdiction. *See* 28 U.S.C. § 1332(d)(4). The Court finds that it does not.

#### 1.  The Court Has Original Jurisdiction over Plaintiff's Action Under CAFA.

Plaintiff does not dispute that CAFA confers original jurisdiction over Plaintiff's putative class action, and in any event, the Court agrees that removal was proper. First, there is the requisite minimal diversity: Plaintiff purports to be a citizen of California, and Mondolēz is alleged to be a Virginia corporation with its principal place of business in Illinois. *See* Compl. ¶¶ 13, 15; Notice ¶¶ 9, 11. Second, there are more than 100 members in the putative class. *See* Compl. ¶ 120 (alleging that the putative class includes "thousands of individuals who purchased Ginger Snaps throughout California during the Class Period"); Notice ¶ 7. And third, notwithstanding Plaintiff's prayer for relief "in the amount of less than $5 million" and her "express[] disclaim[er of] all relief" that would subject her action to CAFA jurisdiction, *see*

4

1   Compl. at 33-34, the Court is satisfied that Mondolēz has shown that "the potential damages could
2   exceed the jurisdictional amount," *see Rea v. Michaels Stores Inc.*, 742 F.3d 1234, 1239 (9th Cir.
3   2014) (citation omitted); Notice ¶¶ 19-25.

### 2. The Local Controversy Exception Does Not Encompass Plaintiff's Claims Because She Did Not Incur Her Principal Injuries in California.

Irrespective of the Court's original jurisdiction, Plaintiff contends that this case is a local controversy within the meaning of section 1332(d)(4), which would require this Court to decline to exercise CAFA jurisdiction. Mot. at 2; *see* 28 U.S.C. § 1332(d)(4). Defendant counters that "[f]ederal courts have repeatedly held the local controversy exception is to be applied narrowly and only to controversies that are 'truly local,'" and that this action, which "challenges conduct that occurred nationwide," does not qualify. *See* Opp. at 4 (citation omitted). This amounts to an argument that Plaintiff's action does not meet the requirements of section 1332(d)(4)(A)(i)(III) ("section III"), which requires that the "principal injuries resulting from the alleged conduct or any related conduct of each defendant [be] incurred in the State in which the action was originally filed." The Court agrees that Plaintiff's action fails to meet the requirements of section III, and that as a result, the local controversy exception does not apply.

#### a. Section III requires local controversies to be "truly local."

The Ninth Circuit has not spoken directly on the issue of under what circumstances a plaintiff's principal injuries are incurred in the state where a putative class action is filed within the meaning of section III. Courts analyzing the question have generally taken one of two approaches.

The first approach, for which Mondolēz advocates, is set forth in *Kearns v. Ford Motor Co.*, No. CV 05-5644 GAF (JTLX), 2005 WL 3967998 (C.D. Cal. Nov. 21, 2005). There, the plaintiff sued Ford Motor Company over its "Certified Pre-Owned" ("CPO") program, which it used to designate used vehicles that had been put through a qualifying inspection. *Id.* at *2. The plaintiff also named as a defendant Claremont Ford, a local Ford dealer. *Id.* He contended that "the CPO program artificially inflate[d] the price of vehicles." *Id.* After a lengthy analysis, the Court determined that the action did not fall within the local controversy exception because it did

5

not meet the requirements of sections (aa) and (bb) of CAFA. *See id.* at \*8-11. Noting that "the inquiry [was] technically over," the court nevertheless analyzed the "moot" point of whether the plaintiff's "principal injuries" were incurred in California under section III. *Id.* at \*11. Finding the term "principal injuries" to be ambiguous, the court looked to the legislative history:

> In keeping with Congress' asserted goal that the exception be applied narrowly and that jurisdiction apply to all but truly local controversies, the [Senate] Committee Report states that: "[I]f the defendants engaged in conduct that could be alleged to have injured consumers throughout the country or broadly throughout several states, the case would not qualify for this exception, even if it brought only as a single-state class action. . . . In other words, this [local controversy] provision looks at where the principal injuries were suffered by everyone who was affected by the alleged conduct—not just where the proposed class member were injured."

*Id.* at \*12 (citing S. Rep. No. 109-14) (second brackets in original). Accordingly, the court found that because "the principal injuries alleged in this suit are not limited to California, as asserted by [the plaintiff]," and that because "the CPO program is marketed nationwide," meaning "any injuries would have been suffered by consumers throughout the country," the local controversy exception did not apply. *Id.*

The second approach, for which Plaintiff advocates, was set forth in *Kaufman v. Allstate New Jersey Insurance Co.*, 561 F.3d 144 (3d Cir. 2009). In that case, a defendant insurance company argued to the district court that it "must interpret [section III] to require that principal injuries resulting from the alleged conduct *and* any related conduct of each defendant be incurred in the state in which the action was originally filed." *Id.* at 158 (original emphasis). The court likened this argument to "interpret[ing] the disjunctive 'or' as a conjunctive 'and.'" *Id.* It then rejected this interpretation, holding that this provision "invokes 'the alleged conduct or any related conduct' in the disjunctive," and as such, "is satisfied either 1) when principal injuries resulting from the alleged conduct of each defendant were incurred in the state in which the action was originally filed, 'or' 2) when principal injuries resulting from any related conduct of each defendant were incurred in that state." *Id.*

The cases following *Kearns* have thus construed CAFA to require local controversies to be "*truly local*." *See Waller v. Hewlett-Packer Co.*, No. 11cv0454-LAB (RBB), 2011 WL 8601207, at \*4 (S.D. Cal. May 10, 2011) ("Plaintiff's action is local only in the trivial and almost

tautological sense that the definition of the putative class and the legal bases of the asserted claims make it so. . . . [T]he broader point here is that the [product at issue was] marketed and sold nationwide, Plaintiff alleges nothing wrongful about their marketing and sale that is peculiar to California, and there is no reason to believe that the Defendants aren't vulnerable to suit on very similar grounds beyond California.") (original emphasis); *see also Phillips v. Kaiser Foundation Health Plan, Inc.*, 953 F. Supp. 2d 1078, 1086 (N.D. Cal. 2011) (citing CAFA's legislative history for the proposition that "Congress did not intend for plaintiffs to defeat federal jurisdiction by filing essentially national or regional class actions limited to plaintiffs from one state," and finding that the local controversy exception did not apply). The cases following *Kaufman*, on the other hand, have found such an approach inconsistent with the text of CAFA. *See, e.g.*, *Simmons v. Ambit Energy Holdings, LLC*, No. 13-CV-6240 (JMF), 2014 WL 5026252 (S.D.N.Y. Sept. 30, 2014) ("Plaintiffs rely on cases holding that the local controversy exception does not apply to cases in which defendants engaged in conduct that could be alleged to have injured persons throughout the country or broadly throughout several states. As the Third Circuit [in *Kaufman*] has explained, however, those holdings are hard to square with the plain language of CAFA, which uses the disjunctive 'or' rather than the conjunctive 'and.'") (some internal quotation marks omitted).

Under *Kearns*, the fact that Defendants do business in other states—thus rendering the harm decidedly not peculiar to California—would preclude application of the local controversy exception. Under *Kaufman*, the Court would strictly construe the text of CAFA and find the requirements of section III satisfied if injuries resulting from "any related conduct" of Pak 'N Save were incurred in California. The Court finds the reasoning of *Kearns* more persuasive, and adopts it here.

### b. Because Plaintiff alleges that the harm caused by Defendants is national in scope, the local controversy exception does not apply.

As relevant to this analysis, Plaintiff alleges that "Ginger Snaps were placed into interstate commerce by Defendants *and sold throughout the country* and in this [Alameda] County." Compl. ¶ 132 (emphasis added); *see also id.* ¶ 147 (same). In other words, Plaintiff's own

7

allegations establish that "the principal injuries alleged in this suit are not limited to California" because Ginger Snaps are sold nationwide. *See Kearns*, 2005 WL 3967998, at *12.[3] While that was not determinative in *Kearns* (which described the section III analysis as "moot"), its reasoning is compelling with respect to why the Court should decline to apply the local controversy exception. CAFA's legislative history, while not binding on this Court, is clear in stating that section III "looks at where the principal injuries were suffered by *everyone* who was affected by the alleged conduct—not just where the proposed class members were injured." *Id.* (citing S. Rep. No. 109-14) (emphasis added). Moreover, Plaintiff encounters the same obstacle as did the plaintiff in *Waller*: her action is "local only in the trivial and almost tautological sense that the definition of the putative class and the legal bases of the asserted claims make it so." *See* 2011 WL 8601207, at *4. Plaintiff has defined the putative class as consumers in California, while at the same time alleging that the harm—*i.e.*, the selling of Ginger Snaps—is national in scope. *See* Compl. ¶¶ 132, 147. The Court "look[s] beyond" this framing, "to the nature and scope of the alleged wrong," which the Complaint itself establishes is not California-specific or otherwise meaningfully local. *See Waller*, 2011 WL 8601207, at *4 ("Plaintiff alleges nothing wrongful about their marketing and sale that is peculiar to California, and there is no reason to believe that the Defendants aren't vulnerable to suit on very similar grounds beyond California."). Whether Plaintiff *intends* to bring this action on a state-by-state basis is irrelevant. *See id.* What matters is that Plaintiff's claims are local only because of the manner in which she alleges them.

Accordingly, the Court finds that Plaintiff has failed to show that her alleged harm was incurred in California within the meaning of section III. Because she has failed to satisfy this requirement of the local controversy exception, her motion to remand is denied.[4]

//

//

---

[3] The Court need not address the parties' dispute over whether it can properly consider the declaration filed by Mondolēz that it cites in its opposition brief, *see* Dkt. No. 1-2 (Declaration of Jason L. Levine), because the allegations of the Complaint are sufficient for purposes of the section III analysis. The Court therefore does not consider the declaration.
[4] Plaintiff's request for attorney's fees is accordingly denied as moot.

### B. The Court Orders the Parties to Show Cause Why the Case Should Not Be Stayed Pending Certain Decisions by the Ninth Circuit.

In its motion to dismiss, Mondolēz cites another case pending before this Court: *Backus v. Biscomerica Corp.*, No. 16-cv-3916-HSG. *See* Dkt. No. 22 at 1. As relevant here, the *Backus* plaintiff filed an amended complaint challenging the defendant's use of PHO in packaged cookies, *see* No. 16-cv-3916-HSG, Dkt. No. 35 ¶¶ 4-10, and presenting claims which on their face appear materially similar to those of Plaintiff. *See id.* ¶¶ 107-27 (asserting causes of action under California's Unfair Competition Law). Shortly thereafter, the Court stayed the *Backus* case pending decisions by the Ninth Circuit in *Hawkins v. Kroger Co.*, No. 16-55532 and *Hawkins v. AdvancePierre Foods, Inc.*, No. 16-56697, which "could significantly narrow the issues in [the] case, conserve judicial resources, and avoid unnecessary legal expense." *See* No. 16-cv-3619-HSG, Dkt. No. 45.[5] Given the apparent similarities between *Backus* and this case, the Court orders the parties to show cause why this case should not be stayed for similar reasons.

### IV. CONCLUSION

The Court **DENIES** Plaintiff's motion to remand. Further, the Court orders the parties **TO SHOW CAUSE** why the case should not be stayed in accordance with the discussion above. The parties shall file statements of no more than three pages detailing their respective positions by July 13, 2018.

**IT IS SO ORDERED.**

Dated: 6/28/2018

HAYWOOD S. GILLIAM, JR.
United States District Judge

---

[5] The parties in *Backus* later identified another case pending in the Ninth Circuit that addresses similar allegations with respect to PHO: *McGee v. Diamond Foods, Inc.*, No. 17-55577. *See Backus*, No. 16-cv-3619-HSG, Dkt. No. 50.

9